[Cite as *State v. Stillwell*, 2016-Ohio-3442.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| LAVONN STILLWELL | : | Case No. 15 CAA 04 0030 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County
Court of Common Pleas, Case No.
14-CR-I-07-0324

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      June 13, 2016

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

CAROL HAMILTON O'BRIEN          JEFFREY P. UHRICH
Delaware County Prosecutor          Law Office of Jeffrey P. Uhrich
         P.O. Box 1977
By: BRIAN J. WALTER          Westerville, Ohio 43086
Assistant Prosecuting Attorney
140 North Sandusky Street
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Defendant-appellant Lavonn Stillwell appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of trafficking in marijuana. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On July 25, 2014, the Delaware County Grand Jury indicted appellant on one count of trafficking in marijuana in violation of R.C.  2925.03(A)(2), a felony of the fifth degree. The charge was accompanied by a forfeiture specification. At his arraignment on September 3, 2014, appellant entered a plea of not guilty.

{¶3}   Thereafter, a jury trial commenced on January 27, 2015. The following testimony was adduced at trial.

{¶4}   On October 13, 2012, Trooper Marcus Pirrone of the Ohio State Highway Patrol was on duty in uniform in a marked cruiser when he observed a silver gold car make a U-turn on Polaris Parkway. The Trooper activated his lights and pulled the vehicle, which was driven by appellant and contained a female passenger, over.  As he was talking to appellant, the Trooper smelled burnt marijuana and asked appellant if he had any marijuana. Appellant indicated that he did and "reached  in between, basically like in between his seat and there's a center console, there was a, he had a computer black canvas type bag shoved down kind of in between the seat and he pulled out a bag of marijuana." Transcript at 33.

{¶5}   Trooper Pirrone then asked appellant if he had any more marijuana in the vehicle and appellant reached into the computer bag and pulled out a large bag of marijuana. When appellant pulled out the second larger bag of marijuana, Trooper Pirrone

observed another baggy and a calculator inside the black canvas bag. No other school supplies were found inside the canvas bag. Trooper Pirrone further testified that 28 Ziploc baggies in a larger baggy and a Taser were removed from the black canvas bag. The Trooper then called for backup assistance.

{¶6} After Trooper Nicholas Shaw arrived on the scene, Trooper Pirrone found a black jacket in the back of the vehicle, which belonged to either appellant's girlfriend or his mother. When he lifted the jacket, he found a large Mason jar containing marijuana although appellant had denied that he had any more marijuana in the vehicle. Appellant's female passenger indicated that the jacket belonged to appellant and appellant agreed. Trooper Pirrone did not find anything used to smoke marijuana in the vehicle such as rolling papers or paraphernalia. When asked how much marijuana was found, he testified that it was a little over a quarter of a pound.

{¶7} Trooper Nicholas Shaw of the State Highway Patrol testified that when he searched appellant, he found a large sum of cash in both of appellant's front pockets. The cash totaled $2,145.00 and was in the form of tens, twenties, fifties, fives and ones. When the bills were found on appellant, they "were jumbled up in a completely disorganized mess, some folded, some folded one way, some folded the other way, some crumbled. It was chaotic, no organization whatsoever." Transcript at 62. The bills were not organized by denomination. Appellant was taken to the Ohio State Highway Patrol Post where he stated that all of the marijuana was his. Trooper Shaw testified that appellant told him that he takes the marijuana and puts it into smaller baggies, but that no marijuana was found in the small baggies at the time of the stop. Appellant also told the Trooper that he had acquired the cash from financial aid for school over time.

Appellant told the Trooper that he used the money to pay for classes, books and other things and that he was going to use the $2,145.00 during a shopping trip to Columbus that weekend.    Trooper Shaw further testified that appellant told him that he was unemployed and that he had bought the marijuana about a week before the stop.

{¶8}    The marijuana seized during the traffic stop was sent to a lab for testing. It was determined that there was a total of 109 grams of marijuana, which is a little less than a quarter of a pound.

{¶9}    At trial, Tonya Stillman-Ross, appellant's mother, testified that at the time of the traffic stop, appellant was attending the Newark branch of The Ohio State University. She testified that appellant had received loans to pay for his schooling and that she was also helping him out with his expenses as was his grandmother. When asked what appellant did with his money, Stillwell-Ross testified that appellant mainly kept his money on him to pay for car expenses and that he refused to put his money in the bank. On cross-examination, she admitted that appellant did have a bank account.

{¶10} The next witness to testify at trial was Fleecie Hubert, appellant's grandmother. She testified that appellant, at the time of the stop, was in college and that he received a grant to pay for his schooling. Hubert also testified that she and her daughter also helped appellant out with his expenses such as rent, gas, electric and car-related items. According to Hubert, appellant always kept cash on him and did not trust banks.

{¶11} Appellant testified at trial on his own behalf. According to appellant, on the day in question, he grabbed his computer bag, which had the marijuana in it as well as

the calculator left from school and baggies, while heading out for a baby shower in the Columbus area. At the time of the stop, appellant was driving his girlfriend's vehicle.

{¶12} Appellant, when asked how much marijuana he had smoked prior to Trooper Pirrone questioning him, testified that he had around four or five blunts, which was normal for him. Appellant testified that the marijuana found was his as were the cash and the baggies. The following is an excerpt from appellant's trial testimony:

Q: Okay. Let's go through those items item by item. Let's start with the marijuana. The officer seemed to think that that less than a quarter of a pound of marijuana is a lot of marijuana. Why did you have so much marijuana?

A: I had so much marijuana because before the quarter usually starts, because I am a smoker, heavy smoker, I usually buy about how much I'll need for the quarter because I'm getting this grant money and, you know what I'm saying, I use it to pay for, you know, separate things that my grandparents and parents don't know about. So I bought about a half pound regular grade weed for about $350.

Q: And the marijuana that you see on the table there, is that marijuana that you had been smoking?

A: Yes.

{¶13} Transcript at 98.

{¶14} According to appellant, prior to being stopped in the fall of October, he was smoking between seven and nine blunts a day. He testified that the marijuana found was for his personal use and that he used the small Ziploc baggies to transport small amounts

of marijuana with him to different places for his daily personal use. When asked why no marijuana was found in the baggies, appellant testified that the reason was because he "brought my whole bag of marijuana with me,…" Transcript at 99.   Appellant also testified that the Taser belonged to his girlfriend and that the officer gave it back to her.  He further testified that he forgot to take the calculator out of his computer bag.

{¶15}  Appellant denied selling marijuana and testified that the money found on him came from loans and grants. Appellant testified that he received approximately $1,800.00 a quarter in student loans and another approximately $700.00 per quarter in grants. He further testified that after the money was directly deposited into his account, he withdrew over $1,000.00 at once. Although his mother and grandparents told him to put the money in the bank, appellant testified that he preferred to keep the money at home because he did not trust banks.

{¶16}  On cross-examination, appellant testified that he probably told Trooper Shaw that he had smoked ten blunts that day, but that he actually smoked only four or five blunts. When asked about lying to Trooper Shaw, appellant testified that he was high at the time.   Appellant also testified on redirect that he kept the money in increments of $100.00 each and that he had all of the money on him because he was trying to show off to his girlfriend.

{¶17}  At the conclusion of the evidence and the end of deliberations, the jury, on January 27, 2015, found appellant guilty of trafficking in marijuana. The jury also returned a verdict of guilty as to the forfeiture specification, which concerned the $2,145.00 found on appellant's person. As memorialized in a Judgment Entry filed on March 24, 2015, appellant was placed on community control for a period of two years and ordered to serve

thirty (30) days in jail as part of his community control. The trial court ordered the $2,145.00 forfeited to the State of Ohio.

{¶18} Appellant now raises the following assignment of error on appeal:

{¶19} THE CONVICTION OF TRAFFICKING IN DRUGS [IS] NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

{¶20} Appellant, in his sole assignment of error, argues that his conviction for trafficking in drugs is against the manifest weight and sufficiency of the evidence. We disagree.

{¶21} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967)

{¶22} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶23} Appellant, in the case sub judice, argues that there was evidence that he was a long-term heavy user of marijuana and used marijuana regularly. He contends that there was no evidence that he was involved in any drug sales or buys at or around the time that he was stopped. He further maintains that there was no evidence that the marijuana he was found with was packaged for resale or to contradict his testimony that he purchased marijuana in bulk for personal use.

{¶24} However, we find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant trafficked in marijuana. Testimony was adduced at trial that three large bags of marijuana were located in three separate areas of the vehicle. The marijuana totaled just under a quarter of a pound and was valued at $1,500.00 to $2,000.00.  Some of the marijuana was located within a computer black canvas bag that that shoved between the seat and the center console. A large Mason jar containing marijuana was later found under appellant's jacket in the back seat although appellant had denied having any more marijuana.

{¶25}  In addition, appellant had 28 small Ziploc baggies, a calculator and a Taser located with the marijuana. As noted by appellee, despite appellant's claim that he used the baggies to package marijuana for his own personal use, none of the baggies contained any marijuana residue. Finally, appellant, who was unemployed at the time, was found with $2,145.00 on his person in his pockets. There was testimony that the cash was in a "disorganized mess" and that some of the bills were folded while others were

crumbled. Transcript at 62.  We find that a rational jury could have found that the cash was proceeds derived from trafficking in marijuana.

{¶26}  We further find that the jury did not lose its way in convicting appellant. The jury, as trier of fact, was in the best position to assess appellant's credibility. Clearly, the jury did not find appellant's testimony that all of the marijuana was for his personal use and that the money came from loans, grants and family members credible in view of the entire testimony.

{¶27}  Appellant's sole assignment of error is, therefore, overruled.

{¶28}  Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.